Filed 6/26/14  P. v. Moore CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>BRETT LEONARD MOORE,<br><br>        Defendant and Appellant. | A140114<br><br>(Contra Costa County<br>Super. Ct. No. 05-121668-8) |

Brett Leonard Moore (appellant) appeals from a judgment entered after a jury convicted him of first degree burglary (Pen. Code, §§ 459/460, subd. (a)[1]) and the trial court sentenced him to three years in state prison.  Appellant's counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 and requests that we conduct an independent review of the record.  Appellant was informed of his right to file a supplemental brief and did not do so.  Having independently reviewed the record, we conclude there are no issues that require further briefing, and shall affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

An information was filed October 4, 2012, charging appellant with first degree burglary (§§ 459/460, subd. (a)) while a nonparticipant was in the home, rendering the offense a violent felony (§ 667.5, subd. (c)(21)).  The information also alleged he had served a prior prison term (§ 667.5, subd. (b)) and was eligible for a state prison sentence (§§ 1170, subds. (h)(3)(A), (f)).

---

[1]All further statutory references are to the Penal Code.

1

On October 12, 2012, appellant moved to suppress evidence on the ground that the police "unreasonably detained him without possessing probable cause that [appellant] was involved in criminal activity." At the hearing on the motion, police officer Eric Johnsen testified that at about 8 a.m. on May 1, 2012, he was dispatched to a home in Antioch to investigate a suspicious person report. When he arrived about five minutes later, he spoke with the resident, Sean McGowen, who said that just before the police were called, he heard his dogs barking in the backyard. When McGowen went to investigate, he saw an intruder walking out of his garage with some of his property. McGowen described the suspect as a scruffy looking white male adult, possibly a transient, about 5'8" tall, weighing 200 pounds, and wearing short pants and "a red bathrobe-type shirt" or "what looked like a red bathrobe."

While Johnsen was at the house investigating the burglary, he received another report of a suspicious person about two blocks away. Dispatch described that suspicious person as a scruffy looking white male "wearing what appeared to be a red bathrobe." Johnsen testified that the second dispatch call came in approximately five to ten minutes after the first dispatch call came in. Johnsen responded to the scene of the second dispatch, where he observed a man—later identified as appellant—sitting on a hillside on the side of the intersection.

When Johnsen first saw appellant, appellant was wearing dark-colored shorts and a dirty, faded, and worn red, baggy San Francisco 49ers pullover sweatshirt that came down to mid-thigh level. Appellant's sweatshirt "[f]it like a mid-thigh length bathrobe." Appellant was unshaven, had dirty, greasy hair, and appeared to be about 5'8" tall and about 210–220 pounds. Johnsen directed appellant to come down the hill and sit on the curb; appellant complied. Johnsen did not find a red bathrobe in the area. Another officer brought McGowen to the scene to do an in-field show-up. McGowen positively identified appellant.

Defense counsel argued that Johnsen did not have reasonable suspicion to detain appellant because he was not wearing a red bathrobe and therefore did not match the description of the person McGowen had encountered in his backyard. The prosecution

2

argued that Johnsen had reasonable suspicion to detain appellant because the description—e.g., height, weight, race, and scruffy appearance—that was given to him by McGowen and by dispatch closely matched that of appellant. As to the bathrobe, the prosecution pointed out that both McGowen and dispatch described the man as wearing what appeared to be a bathrobe, and that when located, appellant was in fact "wearing a sweatshirt that was large enough to be considered a bathrobe or to fit like a bathrobe." Moreover, appellant was found just a couple of blocks away from McGowen's home, and only a short period after McGowen saw a stranger coming out of McGowen's garage. The trial court denied the motion to suppress evidence.

On September 3, 2013, the trial court granted appellant's in limine motion to bifurcate the prior prison term enhancement allegation and try it to the court. A jury was then sworn and witnesses testified to the following facts: Sean McGowen had lived in a house located on Saint Francis Drive in Antioch (the Saint Francis house) for several years, but by May 2012, he was spending nights elsewhere with a roommate because he was going through a divorce. His estranged wife, three children, and two others were living in the Saint Francis house as of May 2012. McGowen woke up between 6:00 and 6:30 a.m. on the morning of May 1, 2012, and arrived at the Saint Francis house at approximately 7:00 a.m. to pick up his children and take them to school.

About an hour later, as he and his children were getting ready to leave for school, McGowen let his dogs out. The dogs went around the corner of the house and started barking at something. McGowen went outside to stop them from barking. When he rounded the corner of his house, he saw that the door of his attached garage was open and that a stranger was coming out, pushing McGowen's bicycle and carrying a bag. The stranger looked startled, dropped the bicycle and bag, and backed away towards the backyard fence door. He picked up a two-by-four that was nearby and swung it gently as McGowen approached within three or four feet. When McGowen stopped advancing, the stranger left the backyard and walked away. McGowen and the stranger faced each other from a distance of 8 to 10 feet during the incident. The sun was up, but it was not overly bright or overly dark outside. McGowen went back inside after the intruder left to make

3

sure everybody was safe and to ask whether they knew if someone had been in the garage. The others were startled and scared to learn of the incident, and one of them called 911.

Antioch police officer Eric Johnsen responded to the 911 call around 8:00 a.m. McGowen told the officer about the burglary and described the suspect as a scruffy looking white male, possibly a transient, who was about 5'8" tall, weighed about 200 pounds, and was wearing a red bathrobe.

Johnsen inspected the point of entry and unsuccessfully attempted to locate fingerprints on it. He then returned to his patrol car at about 8:30 a.m. to write a report about the incident. When he checked pending calls for service, he saw there had been another call about a suspicious person around the corner from McGowen's home. The description of the suspicious person was similar to the person McGowen had described. Johnsen immediately drove to the reported location.

When he arrived there, Johnsen saw the suspect—later identified as appellant— sitting up on a hillside. He was dirty and scruffy-looking, with about two days growth of a beard, stood about 5'8" tall and weighed between 180 and 200 pounds. Appellant was wearing red shorts and a baggy red 49ers sweater. Johnsen ordered appellant to come down from the hill; he complied. Johnsen called in to request a one-person infield show-up and had appellant sit on the curb while they waited for McGowen to arrive to make an identification.

About 20 minutes after Johnsen responded to the 911 call, police informed McGowen that they had detained someone and wanted McGowen to look at him. McGowen testified that before he was taken to the location by an officer Fromme, he was told that the person may or may not be the one who entered the garage. When McGowen saw appellant, he said "yes, that was the person." He knew it was the same man because he wore the same kind of clothing and had the same kind of hair.

Johnsen placed appellant under arrest and transported him to the police station for booking. Later, Johnsen searched the immediate area around the hill. He did not find any property taken from the Saint Francis house, any burglary tools or gloves, or a red

4

bathrobe. The duffel bag left behind at the scene of the burglary contained miscellaneous personal items such as clothing, snowboards, toys, and a car stereo. McGowen identified appellant at the trial as the man he saw leaving the garage with the duffel bag and bicycle.

The jury found appellant guilty of first degree burglary and also found the victim was present in the residence during the burglary. The trial court found the prior prison term enhancement allegation to be true and sentenced appellant to an aggregate term of three years in state prison, comprised of the midterm of two years for the burglary and a consecutive one year term for the prior prison term enhancement. The court awarded appellant 162 actual time credits plus 24 local conduct credits, for a total of 186 days of presentence credit, and imposed various fines, fees, and costs.

## DISCUSSION

Appellant's counsel has filed a brief pursuant to *People v. Wende*, *supra*, 25 Cal.3d 436, and asks this court to "independently review the entire record to determine . . . if it contains any arguably meritorious issues." He refers to the following as possible, but not arguable, issues under *Anders v. California* (1967) 386 U.S. 738: "(1) did the trial court improperly deny appellant's motion to suppress; (2) did the prosecution carry its burden to prove that the in-court identification was not tainted by an unduly suggestive one person infield lineup and, if not, was the evidence sufficient to sustain the burglary conviction; and (3) for purposes of the special allegation that a non-accomplice was present in a home at the time of a burglary, is the offense of burglary completed at the time a person enters a residence with the requisite intent and, if so, did the prosecution carry its burden to prove that appellant was not already in the garage when the victim returned home after sleeping elsewhere the night before?"

A review of the record and the issues suggested by appellant's counsel has disclosed no reasonably arguable appellate issue, and we are satisfied that counsel has fully complied with his responsibilities. (*People v. Wende*, *supra*, 25 Cal.3d 436; *People v. Kelly* (2006) 40 Cal.4th 106.) The trial court did not err in denying the motion to suppress evidence. The in-court identification was not unduly suggestive, and there was substantial evidence to support the conviction. There was no error in regards to the

5

special allegation finding.  Appellant was adequately represented by counsel at every stage of the proceedings.  There was no sentencing error.  There are no issues that require further briefing.

## DISPOSITION

The judgment is affirmed.


_____
McGuiness, P.J.


We concur:


_____
Siggins, J.


_____
Jenkins, J.